## DORKRAY & ux. vs. NOBLE & al.

Where land is conveyed in mortgage, and no separate obligation is given for payment of the money, a deed of quitclaim and release of the land, from the mortgagee to a stranger, is sufficient to assign the mortgage, and all his rights and interest under it.

If such assignment be made before entry for condition broken, and without consideration,—whether the creditors of the mortgagee can avoid it, they having no right to levy on the land as his property,—*quære.*

Tender, to discharge a mortgage, must be made to him who has the legal estate, and the right to reconvey. Therefore where the mortgagee has assigned all his interest to a stranger, of which the mortgagor has actual or implied notice, the tender must be made to the assignee.

THIS was a bill in equity, by the assignees of a mortgagor, to redeem certain mortgaged premises. The bill was originally inserted in a writ of attachment, pursuant to the statute, and was brought against *Noble* alone. It contained no interrogatories, and did not call for an answer under oath. The answer, among other things, disclosed a prior conveyance of all *Noble's* right in the premises to *Eleazar Wyer.* A supplemental bill was then filed against *Wyer* and *Noble,* impeaching the conveyance to *Wyer* as collusive, and praying their answers under oath ; which were accordingly so given, fully denying all the charges in the bill. The other facts, material to the case, will be found clearly stated in the opinion of the Court.

*Daveis*, for the plaintiffs, contended, *first*, that the conveyance to *Wyer* was no assignment of the debt itself, but only a naked release of *Noble's* lien ; or rather of his title to the land ; *Noble* at that time denying the plaintiffs' right to redeem. Its effect was merely a conveyance of *Noble's* right to redeem the mortgage to *Burnham*. For any other purposes, the seisin of *Wyer* was only for an instant, and cannot therefore be made the foundation of any right in the present case. *Holbrook v. Phinney*, 4 *Mass.* 569 ; *Clap v. Draper, ib.* 267 ; *King v. King*, 7 *Mass.* 499 ; *Clark v. Munroe*, 14 *Mass.* 351.

*Secondly.* The tender to *Noble* was good, notwithstanding the transactions with *Wyer ;* of which, however, the plaintiffs had in fact no knowledge. The mortgage itself, both debt and lien, must be assigned, in order to vest the assignee with the rights and liabilities of the mortgagee. And the assignee must hold both the title and the legal possession, to make a tender to him good. *Wing v. Davis*, 7 *Greenl.* 31 ; *Vose v. Handy*, 3 *Greenl.* 322 ; *Warden v. Adams*, 15 *Mass.* 236 ; *Gray v. Jenks*, 5 *Mason*, 520 ; *Clark v. Wentworth*, 6 *Greenl.* 260. The holder of the land is but a trustee for the mortgagee. *Smith v. Dyer*, 15 *Mass.* 23 ; *Crane v. March*, 4 *Pick.* 136 ; *Gould v. Newman*, 6 *Mass.* 239 ; *Hatch v. White*, 2 *Gall.* 155 ; *Jackson v. Blodget*, 5 *Cowen*, 202 ; *Wilson v. Troup*, 2 *Cowen*, 195 ; *Jackson v. Curtis*, 19 *Johns.* 231. The tender therefore could be made with safety to none but *Noble*. *Smith v. Dyer*, 16 *Mass.* 18 ; *Scott v. McFarland*, 13 *Mass.* 310 ; *Parker v. Lincoln*, 12 *Mass.* 19 ; *Cutler v. Haven*, 8 *Pick.* 490.

*Longfellow* and *Greenleaf*, for the defendants.

The opinion of the Court was read at the ensuing *November* term, as drawn up by

MELLEN C. J. The following is a brief summary of the principal facts. *Moses Plummer*, the former owner of the premises in question, mortgaged the same to *Noble* to secure to him the payment of $300 in ten years with interest. The mortgage is dated on the 22d of *April*, 1817. *May* 2, 1817, he made a lease to *Noble*

of the same premises for ten years from the date of the mortgage, at the annual rent of $18, under which lease *Noble* went into possession. *July* 15th, 1818, *Moses Plummer* conveyed the premises to his son *Moses Plummer*, jr. subject to the above mentioned mortgage. On the 13th of said *July*, *Moses Plummer* junr. conveyed the same premises to *Noble* by a deed, absolute in form, conveying to him the same in fee. At the same time *Noble* gave to *Plummer* two negotiable notes, one for $200, payable in three months from date, and the other for $100, payable in six months ; both on interest. At the same time *Noble* made and executed to *Plummer* a bond, with condition to " reconvey to said *Plummer* the aforesaid premises, in as full and ample a manner as the said *Plummer* conveyed the same to said *Noble*," if he, said *Plummer*, should pay said *Noble*, his heirs, executors, administrators or assigns, the said two sums at the times appointed for payment, or save *Noble* harmless from the payment of them, and return the notes to him. It is admitted that *Plummer* never paid either of said notes, but that *Noble* paid them to the holders of them. The above bond was recorded *July* 18th, 1818. On the 11th of *February*, 1825, said *Moses Plummer*, conveyed all his right and title in the premises to his daughter, *Mary-Ann-Smith Plummer*, now the wife of *Dorkray*, and co-plaintiff with him. Before summarily stating the residue of the facts we will inquire whether *Noble* has done any act, equivalent to an entry to foreclose. Being in possession of the premises in *April*, 1819, and at the times when *Plummer* neglected to pay the two notes, as mentioned in the bond of defeasance, he could not make a formal entry, before two witnesses, according to our statute, for breach of the condition ; but he might do that which would have the same legal effect, viz. give notice to *Plummer*, that, in consequence of such breach, he then elected to hold the premises on account of such breach. Has such a declaration been made and such notice been given ? The answer of *Noble* to the original bill, in relation to this point, is not evidence in the cause ; as that bill does not contain any interrogatories touching the subject. It is a merely voluntary statement, which is denied by the replication. The only proof adduced on the part of the defence, is contained in the dep-

osition of *John Parsons*. The fact testified by him, is in perfect harmony with the mistaken idea entertained by *Noble*, as to the nature and effect of the bond of defeasance. By his answer it appears that, until several years after *April*, 1819, he did not know that *Plummer* ever claimed to have a right of redemption, and ever considered the contract as a mortgage. He himself did not so consider it. Why then should he have deemed any declaration or notice necessary to render his title absolute in due time? He considered it absolute some months before, by reason of the nonpayment of the notes. His declaration to *Plummer*, in the presence of *Parsons*, was, that the land was his own, and that he held it as an absolute estate. This he also says in his answer to the supplemental bill. His language excludes the idea of a conditional estate, requiring any act on his part, tending to render it absolute. We consider this as a stronger case, in this particular, against the defendant, than was made by the facts in *Scott v. McFarland*.

There being no other evidence in the cause upon this point, we proceed in the next place to inquire whether such preliminary steps have been taken by the plaintiffs as entitle them to maintain the bill; and this leads to the statement of the remaining facts, on which the inquiry must be answered. On the 1st of *September*, 1822, *Noble* released, remised, bargained, sold, conveyed and quitclaimed to *Wyer*, " all right, title and interest" in and to the premises in question, with special warranty; and on the same day a mortgage was made by *Noble* and *Wyer*, to *Burnham*, of that, and another parcel of land, owned by *Noble*, with general warranty. *Noble and Wyer*, in their joint answer to the supplemental bill, in relation to that conveyance, about which they were called upon to " set forth the whole and true circumstances, facts, trusts and matters of agreement and understanding between them respecting the premises particularly," state that " when the mortgage was made and executed, *Noble* had a right to make it, as respects the premises in dispute;" which means that, though both deeds were executed on the same day, the mortgage was executed first as they explain it; and they add, that property, though owned in severalty by them, was conveyed by the mortgage, executed by both of them, with covenants, binding them

36

jointly, to save the expense of two mortgages. According to these facts, which are not disproved, *Noble* spoke the truth and acted consistently, in executing the mortgage and making the covenants as to his ownership and seisin of the premises in question, absolute or conditional. This title or estate in the premises passed in mortgage to *Burnham,* leaving the right of redemption in *Noble.* This right was then immediately vested in *Wyer* by *Noble's* conveyance to him ; and on the discharge of *Burnham's* mortgage, the whole estate, once belonging to *Noble* was vested in *Wyer.* Again it appears expressly by the second answer that the deed from *Noble* to *Wyer* was made with good faith and for a full and valuable consideration ; that *Wyer* went into immediate possession of the premises, as his own property, and has peaceably and openly occupied them ever since ; that the sale was absolute ; that the deed was recorded on the 13th of said *September,* and that *Plummer* was personally notified of the deed soon after it was made. Upon the facts we have now stated, was the tender in *July,* 1825, made to *Noble,* a legal and effectual one ? The first section of the statute of 1821, *ch.* 39, provides " that where any mortgagee or vendee, claiming any lands or tenements granted upon condition, by force of any deed of mortgage, or bargain and sale with defeasance, or any person claiming and holding under them, have lawfully entered and obtained possession for condition broken, the mortgagor or person claiming under him, shall have a right to redeem the same at any time within three years next after the possession so obtained, and not afterwards upon payment of whatever may be justly due," to such mortgagee, vendee or person lawfully " claiming and holding under them, and in possession as aforesaid ;" and the person to whom such tender or payment is made is required by the statute to restore the possession, and to execute and deliver to the person thus making tender or payment a good and sufficient deed of release of all his right to the same or enter a discharge in the register's office. The plaintiffs' case, it seems, is not brought within the language of the statute above quoted, though they profess to found their bill upon it ; because they deny that *Noble* or any one else ever entered on the premises for breach of condition ; and there is no proof of such

entry or any thing equivalent to it. On the contrary, their counsel have contended that *Noble* was lawfully in possession under his lease from *Plummer*, at least until his conveyance to *Wyer ;* and at that time the case shows that *Wyer* went into the full and open possession and has ever since so held it. A similar objection was presented against the maintenance of the bill in equity in the case of *Pomeroy v. Winship,* 12 *Mass.* 514, which led the court to the construction of the act of which ours above quoted or referred to is a copy. The Chief Justice observes, " It has been decided that where there has been an entry before the breach, the mortgagee may commence his foreclosure without any new entry, by declaring that he holds for condition broken, when that event shall occur. *Newhall v. Wright,* 3 *Mass.* 138. It seems to be a correlative principle that where the mortgagee is in, the condition being broken, the mortgagor, to secure his rights, may elect to consider him in, as claiming to foreclose ; and that a tender of performance, made to him when thus in possession, shall avail to the mortgagor, as much as if there had been a public entry, or a judgment for possession, because the condition was not performed." But this construction of the statute does not bring the plaintiffs' case within it, because *Noble* was not thus in possession in *July*, 1825, when the tender was made, or afterwards. Without dwelling any longer upon this view of the cause, we will examine certain objections which have been urged by the plaintiffs' counsel to the defence as founded on the deed from *Noble* to *Wyer*, and the alleged insufficiency of the tender to *Noble* after the execution of that deed.

· The first objection is, that nothing was conveyed and assigned by *Noble* to *Wyer* but the land ; that there was no assignment of the debt ; and that unless the debt is assigned by the mortgagee as well as the land, nothing passes by the deed. Several authorities have been cited in support of these positions. We are not disposed to question the correctness of any of them ; nor do we. It is true, however, that though the cases cited from *Cowen,* are good law in *New York,* it does not follow that we should pronounce them correct as applied to our laws on the subject of mortgages, which, in many respects differ from those of that State. It is evident that all

the cited cases, as to this point, vary from the present. *Noble* had nothing to assign to *Wyer* but his right, title and interest in the land in question ; all that he did assign. There was no debt due from *Plummer* to *Noble* when the deed and defeasance were made ; and the contract was of such a nature that none could grow out of it. *Plummer* wanted to realize $300 in cash ; he conveyed the land to *Noble*, who gave him the two negotiable notes, named in the defeasance, which he could easily get cashed, and then gave the bond to reconvey the premises to him if he would see the notes paid to the holders and indemnify *Noble* from all damage. But *Plummer* had his option to pay the notes and receive a reconveyance ; or neglect to pay them, and let *Noble* pay them and keep the land by way of satisfaction and indemnity. The plaintiffs have considered the transaction as constituting a mortgage, and so has the court inclined to consider it; but it is one of those mortgages where there is no personal security or liability. " If the mortgagor will not voluntarily redeem the land, and there is no bond or covenant for payment of the money, he cannot be compelled to do it, but the land must remain the mortgagee's estate ; at least after the three years are elapsed." Judge *Trowbridge's* opinion, 8 *Mass.* 563. Under these circumstances the deed from *Noble* to *Wyer* constituted a legal assignment of the mortgage, the bond of defeasance being duly recorded. In *Warder v. Adams*, cited by the plaintiffs' counsel, the court say that an assignment by a separate deed, makes the grantee the assignee of the mortgage. *Gould v. Newman*, 6 *Mass.* 239, 241.

Another objection is that there was no consideration for the deed from *Noble* to *Wyer*. The objection expressly contradicts the answer ; but, the explanation given is satisfactory. *Wyer* paid for the land out of his several property, and the deed was made to him for the purpose of becoming advantageous to the firm. Why does it differ in this particular, from a purchase of some other person, instead of *Noble* ? But another answer is, that the deed is good against *Noble*, and all other persons, except creditors of *Noble*, whether there was or was not any consideration ; and perhaps good against them inasmuch as lands under mortgage cannot be levied upon as the estate of the mortgagee.

Dorkray & ux. *v*. Noble & al.

Another objection is, that *Wyer's* seisin under the deed from *Noble* was only instantaneous. Surely this objection is groundless as applied to this case. Whether instantaneous or not, the seisin of *Wyer*, in virtue of the deed, was never restored to *Noble*; and the question we are examining is whether his seisin was not terminated by his conveyance.

Another objection urged is, that by the terms of the condition of the bond, *Noble* was to reconvey, on performance of the condition; and that, therefore, the tender was made properly to him. Considering the transaction or contract between *Noble* and *Plummer*, as creating merely a conditional estate in *Noble*, and not a mortgage, this conclusion might be correct; but, in that view of the subject there would be no pretence for maintaining the present bill; for if it was not a mortgage, then the payment of the two notes given by *Noble*, should have been punctually made when they became due; and then *Plummer* or his grantee, perhaps, might regain the possession by an action at law. But, the transaction has been viewed in a more favorable light for the plaintiffs as a mortgage; it must therefore be governed by the law applicable to mortgages. By that law which we have quoted, a payment or tender, for the purpose of redemption, must be made to the mortgagee or vendee, or the person in possession and claiming and holding under him; that is, to the mortgagee or vendee, if there is no assignment, and if the mortgage has been assigned, then to the assignee, who only can reconvey. Such was the decision of this court in *Thompson v. Chandler*, 7 *Greenl*. 377. And in *Cutler v. Haven*, cited by the counsel for the plaintiffs, the court say that notwithstanding there was no legal assignment of the mortgage, there was an equitable one by a delivery over of the deed and note to *Valentine*; and therefore, if the administrator of the mortgagor had notice of such equitable assignment, a payment to the mortgagee or his representative would be deemed fraudulent in respect to *Valentine*. In the present case *Plummer* had notice, *a fortiori*, a payment or tender to *Noble* could not be regular or available, after a legal assignment to *Wyer*.

We have, by way of anticipation, endeavored to answer the objection, founded on the deed of mortgage to *Burnham*, and the peculiar manner in which it was drawn, and in which different parcels of estate, though owned by *Wyer* and *Noble* in severalty, were conveyed by them jointly, accompanied by joint covenants of ownership. We are satisfied with the answer we have given, and shall not repeat it here.

We have thus examined the. facts as displayed to us, and considered the authorities adduced and the arguments urged in support of the bill, and we are satisfied that for want of a legal and effectual tender, it cannot be maintained. The bill is accordingly dismissed, and costs are allowed to the defendants.